UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x

In re:                                                    Chapter 7

GERSHON BARKANY,

                                                          Case No. 814-72941 -845

                    Debtor.

---------------------------------------------------------------------x

Joseph Rosenberg and Deborah Rosenberg

                                                          **COMPLAINT**
                    Plaintiffs,

          - against -                                     Adv. Proc.  No. 8-17-____-las

Barkany Asset Recovery and Management LLC,
Cortland Realty Investments LLC, Marshal
Eisenberg, Debra Eisenberg Wilder, Seth Farbman,
SSS, LLC, Rachell Gober, The Boss's Daughter,
LLC, Shalom Maidenbaum, Jordan Most, Janet
Pinsky, Chaim Silberberg, Mr. San, LLC, Gerald
Pinsky, Moshe Schreiber, Leah Schreiber, Central
Strategies, LLC, MLS Resources, LLC, Mordechai
Hellman, and Saul Kessler.

                    Defendants.

---------------------------------------------------------------------x

          Plaintiffs, Joseph Rosenberg ("Mr. Rosenberg") and Deborah Rosenberg ("Mrs. Rosenberg",

and together with Mr. Rosenberg, the "Rosenbergs", or the "Plaintiffs"), by and through their counsel,

Lester M. Kirshenbaum, hereby file this Complaint seeking relief against the BARM Defendants (as

defined below) and Saul Kessler (the BARM Defendants and Mr. Kessler are collectively referred to as

the "Defendants"), and state as follows:

## NATURE OF THE ACTION

          1.   This is an action brought pursuant to Part VII of the Bankruptcy Rules, seeking judgment against

defendants Barkany Asset Recovery and  Management  LLC  ("BARM")  and eighteen creditors

(collectively, the "BARM Creditors") of Gershon Barkany ("Barkany" or the "Debtor"), for whom

BARM acted as agent, during the period of December 2010 through June 2014 in (i) receiving

assignments and transfers from, and taking possession of, virtually all of the assets of Barkany and a large number of legal entities controlled by Barkany (collectively the "Barkany Entities"), (ii) collecting monies due to Barkany and the Barkany Entities from third parties, (iii) asserting claims held by Barkany and the Barkany Entities, or which arose out of transactions entered into by Barkany and / or the Barkany Entities, against numerous third parties, by, among other things, commencing at least nine separate litigations (beginning in September 2011) where BARM, and / or various individual BARM Creditors were included as plaintiffs; (iv) drafting through Locke Lord, LLP ("Locke Lord"), counsel to BARM and the BARM Creditors, an affidavit of confession of judgment (the "Barkany Confession of Judgment") which was executed by Barkany on behalf of himself and the Barkany Entities on August 1, 2011; and (v) filing the Barkany Confession of Judgment in New York Supreme Court, Queens County on March 25, 2013, and obtaining a $66.6 Million judgment against Barkany and the Barkany Entities in favor of eight of the BARM Creditors and Dekel LLC (the "Barkany Judgment"). All of the actions taken by BARM and by Locke Lord were for the benefit of the BARM Creditors (BARM and the BARM Creditors are collectively referred to as the "BARM Defendants"), and in order to facilitate the distribution of cash from the proceeds of all the activities noted above to the BARM Creditors.

2.    Plaintiffs seek judgment, based on the legal doctrines of unjust enrichment, payments resulting from mistakes in fact and constructive trust; and based on Bankruptcy Rule 3001(e), that the BARM Defendants are liable to compensate and reimburse Plaintiffs out of their distributions from the Barkany Chapter 7 Case ( the "Barkany Bankruptcy Case") estate funds (the "Estate Funds") otherwise payable to BARM and to the BARM Defendants, to the extent that Plaintiffs are held liable to Marc A. Pergament, as Chapter 7 Trustee of the Estate of Gershon Barkany (the "Trustee" or "Mr. Pergament"), in the action entitled Pergament v. Rosenberg , et al.,  Adv. Proc.  No. 8-16-08149-las (the "Rosenberg Action") to turn over to the Trustee all or a portion of, funds totaling $663,700 which Mr. Rosenberg received as a conduit from various third parties and from Barkany, and then, at Barkany's request, promptly transferred to

2

BARM, for the benefit of the BARM Creditors. Plaintiffs also seek judgment against each of the BARM

Defendants directing that they hold the Estate Funds that they receive in constructive trust for the benefit

of the Plaintiffs until each BARM Defendant has satisfied its obligation to reimburse Plaintiffs in

accordance with the judgment in this action.

3.    Plaintiffs seek similar relief against Saul Kessler in order to compensate Plaintiffs from Estate

Funds otherwise payable to Mr. Kessler, to the extent that Plaintiffs are held liable in the Rosenberg

Action to turn over to the Trustee $206,000 out of a $500,000 third party transfer that Mr. Rosenberg

received as a conduit, and then forwarded to Mr. Kessler at Barkany's request, (with the balance of that

third party transfer being paid over to Barkany, as set forth below).

4. This Court has jurisdiction over this action pursuant to 28 U.S.C.  § 1334(b).

5. This adversary proceeding has been referred to this Court pursuant to 28 U.S.C. § 157(a).

6. This action is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), (A), (B) and (O).

7. Venue of this adversary proceeding is proper in this district pursuant to 28 U.S.C.§ 1409(a).

## **PARTIES**

8. Barkany is an individual who resides in New York State.

9. On June 25, 2014 (the "Petition Date"), Mr. Rosenberg, Mr. Kessler and Marina District

Development Co., LLC a/k/a, the Borgata Hotel Casino and Spa filed an involuntary petition for relief

under chapter 7 of the Bankruptcy Code against the Debtor in the United States Bankruptcy Court for

the Eastern District of New York (the "Bankruptcy Court").

10. On January 14, 2015, the Bankruptcy Court entered an order for relief against the

Debtor.

11. By order dated October 13, 2016, Mr. Pergament was appointed as the successor chapter 7

Trustee of the Debtor's estate following the resignation of Mark A. Frankel.

12. Mr. Rosenberg is a resident of the State of New York residing at 14 Sands Point Road,

Monsey, N.Y. 10952-2113.

13. Mrs. Rosenberg is a resident of the State of New York residing at 14 Sands Point Road, Monsey, N.Y. 10952-2113. Mrs. Rosenberg had no connection to, or involvement with any of the activities or transactions discussed in this Complaint, or in the Rosenberg Action Complaint (as defined below). It appears that Mrs. Rosenberg was named as a defendant in the Rosenberg Action by Mark Frankel, the prior Trustee in this case, solely because Mrs. Rosenberg is a joint account holder, together with Mr. Rosenberg, on the Rosenberg Bank Account (as defined below).

14. Defendant BARM is a New York LLC. At all times relevant to this action, S. David Belsky ("Mr. Belsky") was BARM's manager and sole member. According to paragraph 2 of Mr. Belsky's Declaration dated June 11, 2015, which was filed in this Court, BARM "was formed to collect and administer assets of Gershon Barkany ("Barkany") for the benefit of the victims of Barkany's Ponzi scheme who are represented by Locke Lord LLP".

15. BARM has filed a proof of claim (Claim No. 7, the "First BARM Omnibus Claim") in the Barkany Bankruptcy Case on behalf of all the BARM Creditors in the amount of $51,221,629.10. Upon information and belief, BARM is in the process of preparing and filing, an amended Omnibus Proof of Claim in the Barkany Bankruptcy Case on behalf of all the BARM Creditors (the amended Omnibus Proof of Claim to be filed by BARM, together with the First BARM Omnibus Claim, are collectively referred to as the "BARM Omnibus Claims").

16. At all times relevant to this action, BARM served as agent for Defendant Cortland Realty Investments LLC ("Cortland Realty"), a New York corporation, and a creditor of the Barkany Estate. Upon information and belief, Cortland is owned and controlled by Abraham Grohman, a New York State resident. Cortland Realty, acting through Locke Lord, has filed a proof of claim (Claim No. 12) in the Barkany Bankruptcy Case in the amount of $45,036,264.47 (the "Cortland Realty Claim") (the lawyers at Locke Lord and Mr. Belsky are collectively referred to as the "BARM Professionals"). Locke

Lord also represented Cortland Realty individually, together with certain other of the BARM Creditors, including Gerald Pinsky, Jordan Most, Mordechai Hellman and Mr. San LLC, in bringing certain other Barkany related litigations on behalf of individual Barkany Creditors. For example, on September 14, 2011, Locke Lord commenced an action on behalf of Cortland Realty and the other BARM Creditors enumerated in this paragraph against the Zucker and Kwestel law firm, and Steven Kwestel in New York State Supreme Court, Nassau County (the "Zucker & Kwestel Litigation").

17. At all times relevant to this action, BARM served as agent for Defendant Marshal Eisenberg, an individual residing in New York State, and a creditor of the Barkany Estate.  Mr. Eisenberg, together with Debra Eisenberg Wilder, acting through Locke Lord, has filed a proof of claim (Claim No. 13) in the Barkany Bankruptcy Case in the amount of $284,144.79 (the "Wilders Claim").

18. At all times relevant to this action, BARM served as agent for Defendant Debra Eisenberg Wilder, an individual residing in New York State, and a creditor of the Barkany Estate.  Ms. Wilder, together with Marshal Eisenberg, acting through Locke Lord, filed the Wilders Claim.

19. At all times relevant to this action, BARM served as agent for Defendant Seth Farbman, an individual residing in New York State, and a creditor of the Barkany Estate. Mr. Farbman, acting through Locke Lord, has filed a proof of claim (Claim No. 14) in the Barkany Bankruptcy Case in the amount of $569,589.41 (the "Farbman Claim").

20. Upon information and belief, at all times relevant to this action, BARM served as agent for Defendant SSS, LLC, a New York corporation, and a creditor of the Barkany Estate. Upon information and belief, SSS, LLC is owned by, controlled by, or is otherwise related to Seth Farbman.

21. At all times relevant to this action, BARM served as agent for Defendant Rachell Gober, an individual residing in New York State, and a creditor of the Barkany Estate. Ms. Gober and The Boss's Daughter, LLC, acting through Locke Lord, have filed a proof of claim (Claim No. 15) in the Barkany Bankruptcy Case in the amount of $182,016.63 (the "Gober Claim").

5

22. Upon information and belief, at all times relevant to this action, BARM served as agent for Defendant The Boss's Daughter, LLC a New York corporation, and a creditor of the Barkany Estate. Upon information and belief, The Boss's Daughter, LLC is owned by, controlled by, or is otherwise related to Rachell Gober. The Boss's Daughter, LLC, filed the Gober Claim together with Rachell Gober.

23. At all times relevant to this action, BARM served as agent for Defendant Shalom Maidenbaum, an individual residing in New York State, and a creditor of the Barkany Estate. Mr. Maidenbaum, acting through Locke Lord, has filed a proof of claim (Claim No. 16) in the Barkany Bankruptcy Case in the amount of $750,994,84 (the "Maidenbaum Claim").

24. At all times relevant to this action, BARM served as agent for Defendant Jordan Most, an individual residing in New York State, and a creditor of the Barkany Estate. Mr. Most, acting through Locke Lord, has filed a proof of claim (Claim No. 17) in the Barkany Bankruptcy Case in the amount of $1,177,466.36 (the "Most Claim"). Locke Lord also represented Jordan Most, individually, as a named plaintiff in the Zucker & Kwestel Litigation

25. At all times relevant to this action, BARM served as agent for Defendant Janet Pinsky, an individual residing in New York State, and a creditor of the Barkany Estate. Ms. Pinsky acting through Locke Lord, has filed a proof of claim (Claim No. 18) in the Barkany Bankruptcy Case in the amount of $104,438.71 (the "Janet Pinsky Claim").

26. At all times relevant to this action, BARM served as agent for Defendant Gerald Pinsky, an individual residing in New York State, and a creditor of the Barkany Estate. Mr. Pinsky, acting through Locke Lord, has filed a proof of claim (Claim No. 28) in the Barkany Bankruptcy Case, in the amount of $387,535.81 (the "Gerald Pinsky Claim"). Locke Lord also represented Gerald Pinsky, individually, as a named plaintiff in the Zucker & Kwestel Litigation, and in at least one other New York State

litigation commenced by Locke Lord on the same day as the Zucker & Kwestel Litigation on behalf of certain individual BARM Creditors, including Gerald Pinsky.

27.  At all times relevant to this action, BARM served as agent for Defendant Chaim Silberberg, an individual residing in New York State, and a creditor of the Barkany Estate. Mr. Silberberg and Mr. San, LLC, acting through Locke Lord, have filed a proof of claim (Claim No. 19) in the Barkany Bankruptcy Case in the amount of $521,944.64 (the "Silberberg Claim").

28.  Upon information and belief, at all times relevant to this action, BARM served as agent for Defendant Mr. San, LLC, a New York corporation, and a creditor of the Barkany Estate. Upon information and belief, Mr. San, LLC is owned by, controlled by, or is otherwise related to Chaim Silberberg. Mr. San, LLC filed the Silberberg Claim together with Mr. Silberberg. Locke Lord also represented Mr. San LLC, individually, as a named plaintiff in the Zucker & Kwestel Litigation.

29.  At all times relevant to this action, BARM served as agent for Defendant Moshe Schreiber, an individual residing in New York State, and a creditor of the Barkany Estate.  Mr. Schreiber, together with his wife Leah Schreiber, Central Strategies, LLC, and MLS Resources, LLC, acting through Locke Lord, has filed a proof of claim (Claim No. 29) in the Barkany Bankruptcy Case in the amount of $879,892.86 (the "Schreibers Claim").

30.  At all times relevant to this action, BARM served as agent for Defendant Leah Schreiber, an individual residing in New York State, and a creditor of the Barkany Estate.  Ms. Schreiber, together with Moshe Schreiber, Central Strategies, LLC, and MLS Resources, LLC, acting through Locke Lord, filed the Schreibers Claim.

31.  Upon information and belief, at all times relevant to this action, BARM served as agent for Defendant Central Strategies, LLC, a New York corporation, and a creditor of the Barkany Estate. Upon information and belief, Central Strategies, LLC, is owned by, controlled by, or is otherwise

related to Moshe Schreiber and Leah Schreiber. Central Strategies, LLC, joined Moshe Schreiber, Leah Schreiber and MLS Resources, LLC in filing the Schreibers Claim.

32.  Upon information and belief, at all times relevant to this action, BARM served as agent for Defendant MLS Resources, LLC, a New York corporation, and a creditor of the Barkany Estate. Upon information and belief, MLS Resources, LLC, is owned by, controlled by, or is otherwise related to Moshe Schreiber and Leah Schreiber. MLS Resources, LLC, joined Moshe Schreiber, Leah Schreiber, and Central Strategies LLC in filing the Schreibers Claim.

33.  At all times relevant to this action, BARM served as agent for Defendant Mordechai Hellman, an individual residing in New York State, and a creditor of the Barkany Estate. Mr. Hellman, acting through Locke Lord, has filed a proof of claim (Claim No. 34) in the Barkany Bankruptcy Case in the amount of $697,801.62 (the "Hellman Claim"). Locke Lord also represented Mordechai Hellman, individually, as a named plaintiff in the Zucker & Kwestel Litigation.

34.  Each of the aforementioned proofs of claim filed by the BARM Defendants discussed in paragraphs 15 through 33 of this Complaint lists the address of each claimant as "c/o Allen Wasserman, Locke Lord, LLP, 3 World Trade Center, New York, NY 10281".

35.  Defendant Saul Kessler is a resident of the State of New York, and a creditor of the Barkany Estate. Mr. Kessler has filed a proof of claim (Claim No. 4) in the Barkany Bankruptcy Case in the amount of $269,133.13, and an amended proof of claim (Claim No. 27) in the amount of $3,281,872.94. (Claim No. 4 and Claim No. 27 are collectively referred to as the "Kessler Claims").

## BACKGROUND FACTS

36.  On October 5, 2016, Mark Frankel, the prior Trustee, commenced the Rosenberg Action by filing a complaint (the "Rosenberg Action Complaint") against each of Mr. Rosenberg and Mrs. Rosenberg, Jonathan Zelinger and his wife Gila Zelinger, Ethical Products, Inc. ("EPI"), and Petex International Limited ("PETEX"). Upon Mr. Pergament's appointment as the successor Chapter 7

8

Trustee, he replaced Mr. Frankel as the Plaintiff in the Rosenberg Action.

37.   With respect to Mr. Rosenberg and Mrs. Rosenberg, paragraphs 48 and 49 in the Rosenberg Action Complaint list a large number of transfers into the Rosenbergs' joint bank account at Wells Fargo (the "Rosenberg Bank Account") between May 20, 2008, and February 28, 2013 totaling $5,001,641.37 (collectively, the "Challenged Transfers") which the Trustee seeks to avoid and recover from the Rosenbergs.

38.   The Rosenbergs have numerous defenses with respect to all of the Challenged Transfers, and they assert that none of those transfers are avoidable and recoverable by the Trustee from them. Plaintiffs' defenses include, inter alia, (i) that many of the Challenged Transfers represented returns to Mr. Rosenberg of investments that he made in a number of different Barkany deals, and returns of the principal loan amounts which Mr. Rosenberg had loaned to Barkany, (ii) that many of the Challenged Transfers were transfers by third parties of funds that were not owned by Barkany, (iii) that many of the Challenged Transfers were received by Mr. Rosenberg as a conduit, and were forwarded by Mr. Rosenberg to other parties at the request and direction of Barkany; (iv) that many of the Challenged Transfers were received by Mr. Rosenberg as a second tier or third tier transferee in good faith, for value, and without knowledge as to the potential avoidability of those transfers, (v)  that Mr. Rosenberg forwarded all, or significant portions of, the monies in many of the Challenged Transfers, at Barkany's express request and direction, either to Barkany or to various of the Barkany Entities, (vi) that Mr. Rosenberg forwarded many of the Challenged Transfers which were received by Mr. Rosenberg as a conduit, at Barkany's express request and direction, to Barkany's creditors in satisfaction or reduction of the amounts owed by Barkany to such creditors; and (vii) that Mr. Rosenberg is a "net loser" with respect to the totality of his transactions with Barkany.

39.   Moreover, as discussed immediately below, with respect to the specific Challenged Transfers that are the subject of this action, the Plaintiffs assert that they have claims against the Defendants based

on the legal doctrines of unjust enrichment, payments resulting from mistakes in fact, and constructive trust, and pursuant to Bankruptcy Rule 3001(e), which entitle Plaintiffs to judgment directing each of the BARM Defendants and Mr. Kessler, to pay over to Plaintiffs the Estate Funds payable on the allowed claims of the BARM Defendants and of Mr. Kessler in order to compensate and reimburse Plaintiffs for their losses -- to the extent, if any, that Plaintiffs are directed to pay back portions of, or all of, the Challenged Transfers to the Trustee.

**Five Challenged Transfers To Mr. Rosenberg Totaling $663,700, Resulting In Five Payments From Mr. Rosenberg To BARM Totaling $730,000**

40.   Within the Rosenberg Action, the Trustee seeks to avoid and recover from the Rosenbergs, five transfers (collectively the "Five BARM Related Challenged Transfers") totaling $663,700 which resulted in (i) $730,000 in transfers from Mr. Rosenberg to BARM, and (ii) a corresponding $730,000 reduction in Barkany's liability to the BARM Creditors. The first two of those transfers were (i) a November 3, 2011 transfer into the Rosenberg Bank Account of $67,000 and (iii) a November 4, 2011 transfer into that account of $400,000. While the Rosenberg Action Complaint does not identify the transferors of those funds, the $67,000 transfer was made by Charles Berger, a personal friend of Barkany, and the $400,000 transfer was made from the Alan Gerson attorney's account (the "Gerson Account"). Also, upon information and belief, the $400,000 was sent to the Gerson Account by Alfred Schonberger. Moreover, at Mr. Barkany's request, all of those funds, together with an additional $93,000 that Mr. Rosenberg took out of Plaintiffs' own funds, were promptly transferred by Mr. Rosenberg, on November 4, 2011, to Locke Lord in the form of a $560,000 wire transfer (the "$560,000 Locke Lord Payment"), to the Locke Lord attorney's account.

41.   More specifically, on or about November 3 or 4, Barkany told Mr. Rosenberg that it was necessary to wire $560,00 to Locke Lord very promptly in order to prevent certain of Barkany's Creditors (who Barkany did not identify to Mr. Rosenberg) represented by Locke Lord, from foreclosing on the house occupied by Barkany and his family.

42.    Upon information and belief, Locke Lord received the $560,000 Locke Lord Payment from Mr. Rosenberg in Locke Lord's capacity as attorney and agent for BARM and / or for some or all of the BARM Creditors individually, (months after Locke Lord had negotiated and obtained Barkany's signature on the Barkany Confession of Judgment, and also had commenced at least two litigations on behalf of individual BARM Creditors) directly related to Barkany's Ponzi Scheme. Upon further information and belief, Locke Lord, at some point subsequent to November 4, 2011, transferred the proceeds of the $560,000 Locke Lord Payment either to BARM, to be used by BARM for the benefit of the BARM Creditors, or directly to some or all of the BARM Creditors.

43.    The third of the Five BARM Related Challenged Transfers which the Trustee seeks to avoid and recover is a $51,700 transfer by Barkany out of an account in TD Bank under the name "First American Title" that was made on or about February 12, 2013[1]. However, virtually at the same time that Barkany made that $51,700 transfer, Barkany requested and directed Mr. Rosenberg to transfer $50,000 to BARM's lawyer Shalom Jacob, as partial payment on the outstanding balance which Barkany owed to the BARM Creditors. The very next day, i.e. on February 13, 2013, Mr. Rosenberg complied with Barkany's request and hand delivered a check payable to "Barkany Asset and Recovery Management" (the "$50,000 BARM Payment) to Mr. Jacob at Mr. Jacob's home in Monsey, New York. At all times relevant to this action, Mr. Jacob was a partner at Locke Lord.

44.    The final two of the Five BARM Related Challenged Transfers which the Trustee seeks to avoid were sent by Barkany out of a bank account in the name of Sarah Rosenberg – one transfer in the amount of $105,000 was made on or about February 22, 2013, and the last transfer of $40,000 was made by Barkany on or about February 28, 2013.

---

[1] The Trustee also seeks to avoid and recover the $51,700 transfer in a second adversary proceeding numbered 8-17-08171-845.

45.  However, between February 22, and March 1, 2013, Mr. Rosenberg, at Barkany's express request and direction, hand delivered to Mr. Jacob's home three more checks payable to BARM in the aggregate amount of $120,000. Specifically, (i) on February 22, 2013 Mr. Rosenberg hand delivered a $20,000 check to Mr. Jacob (the "$20,000 BARM Payment"); (ii) on February 27, 2013 Mr. Rosenberg hand delivered a $40,000 check to Mr. Jacob (the "$40,000 BARM Payment"); and (iii) on March 1, 2013, Mr. Rosenberg hand delivered a $60,000 check to Mr. Jacob (the "$60,000 BARM Payment"). (The $560,000 Locke Lord Payment, the $50,000 BARM Payment, the $20,000 BARM Payment, the $40,000 BARM Payment, and the $60,000 BARM Payment are collectively referred to as the "Rosenberg Payments to the BARM Defendants")

46.  Upon information and belief, either (i) BARM received from Locke Lord the full $730,000 in Rosenberg Payments to the BARM Defendants, and BARM thereafter distributed all of those funds to the BARM Creditors, and / or used a portion of those funds to pay expenses incurred by BARM for the benefit of all the BARM Creditors; or (ii) portions of the $730,000 of the Rosenberg Payments to the BARM Defendants were transferred directly by Locke Lord to some or all of the BARM Defendants, while the balance of the $730,000 was transferred by Locke Lord to BARM for the benefit of all the BARM Defendants.

47.  All five of the Rosenberg Payments to the BARM Defendants, (which came from the Five BARM Related Challenged Transfers, and the additional $93,000 from the Rosenbergs' own  funds) were received by some or all of the BARM Creditors directly, or were received by BARM as agent for, and for benefit of, all of the BARM Creditors (i) well after the time that Barkany had confessed to BARM, to the BARM Professionals, and to the BARM Creditors (but not to either Mr. Rosenberg or Mrs. Rosenberg) that he had been engaged in a Ponzi Scheme since 2008, and also subsequent to the time Barkany had executed the Barkany Confession of Judgment that was drafted by Locke Lord, (ii) when BARM, the BARM Professionals, and the BARM Creditors knew that Barkany was insolvent and

unable to pay all of the outstanding claims against him, and   (iii) when BARM and the BARM Professionals were in the midst of their ongoing efforts "to collect and administer assets of Gershon Barkany for the benefit of the BARM Creditors".

48.    On the other hand, all of the Five BARM Related Challenged Transfers (i.e. the 11/3/11 $67,000 from Charles Berger, the 11/4/11 $400,000 from Alan Gerson, the 2/12/13 $51,700 from the First American Title account,  and the $105,000 and $40,000 from the Sarah Rosenberg account), and all of  the five Rosenberg Payments to the BARM Defendants (consisting of the proceeds of the Five BARM Related Challenged Transfers and the $93,000 in the Rosenbergs' own funds), were made at times that the Rosenbergs were unaware that Barkany was engaged in a Ponzi Scheme, and while Plaintiffs were unaware that Barkany had, among other things, (i) confessed the Ponzi Scheme to BARM, to the BARM Professionals, and to the BARM Creditors, (ii) executed and given the Barkany Confession of Judgment to Locke Lord for the benefit of BARM and the BARM Creditors, and (iii) assigned and transferred virtually all of the assets of Barkany and the Barkany Entities to BARM.

49.    Moreover, at all times relevant to this Complaint, Mr. Rosenberg acted under the mistaken belief that Mr. Barkany was a completely honest businessman who was experiencing cash flow problems as a result of certain unprofitable investments that Barkany had made. Moreover, with respect to all of the Five BARM Related Challenged Transfers, and all of the other Challenged Transfers, Mr. Rosenberg received all of the funds – both those that came directly from Barkany, and those that came from third parties – while being completely unaware of the Barkany Confession of Judgment, and while Mr. Rosenberg was acting under the mistaken belief that all of the funds were obtained by Barkany through legitimate means.

50.    All of the benefits from the Five BARM Related Challenged Transfers, and the five Rosenberg Payments to BARM, which were effectuated by Mr. Rosenberg at Barkany's specific request and direction, were received (i) by the BARM Creditors, who received $730,000 in cash payments in

13

reduction of their outstanding claims against Barkany, and (ii) by Barkany, who had his debts to the BARM Creditors reduced by $730,000.

51.   On the other hand, Plaintiffs received no benefit from any portion of the aforementioned Five BARM Related Challenged Transfers, or from the five Rosenberg Payments to BARM. Mr. Rosenberg made the five Rosenberg Payments to BARM as an accommodation to Barkany in order to pay persons (i.e., the BARM Creditors) who Mr. Rosenberg understood were investors with Barkany in deals that did not go well, and who were pressing Barkany for repayment.

52.   Had Mr. Rosenberg been aware of the existence of the Barkany Confession of Judgment, and / or that the funds transferred to him in the Five Challenged Transfers were obtained by Mr. Barkany through illegitimate means and / or that Mr. Rosenberg's  consent to accommodate the requests of Mr. Barkany, and to act for the benefit of the BARM Creditors by transferring $730,000 to BARM (including 93,000 of the Rosenbergs' own funds) would put Mr. Rosenberg at risk to the assertion of over $663,700 in avoidance claims being made against him and against Mrs. Rosenberg by a bankruptcy trustee, Mr. Rosenberg would never have agreed to make the payments to BARM with the proceeds of those transfers. In these circumstances, all of the elements of a claim for reimbursement on the basis of mistake in fact exist.

53.   Further, in the Rosenberg Action, the Trustee, among other things, seeks to avoid and recover from the Rosenbergs the transfer of $663,700 into the Rosenberg Bank Account in the Five BARM Related Challenged Transfers, notwithstanding the fact that those transfers resulted in a $730,000 reduction in Barkany's obligations to the BARM Creditors, and the fact that the Rosenbergs received no benefit from any portion of the $730,000 that Mr. Rosenberg forwarded to BARM.

54.   Moreover, upon information and belief, notwithstanding the Trustee's recent settlement with BARM and the BARM Creditors, Cortland Realty still holds well over 50% in amount of the unsecured claims in the Barkany Bankruptcy Case; and the BARM Creditors collectively (including Cortland

Realty) still hold over two-thirds in amount of the unsecured claims in the Barkany Bankruptcy Case. Therefore, absent this Court's granting appropriate relief to the Plaintiffs, should the Trustee be successful in avoiding and recovering the Five BARM Related Challenged Transfers from the Rosenbergs, most of those funds would be paid by the Trustee to Cortland Realty and to the other BARM Creditors on their unsecured claims. Such a sequence of events would lead to a dramatically anomalous, aberrant, and unfair outcome which would provide the BARM Creditors with unjust enrichment at the Rosenbergs' expense, and result in the Rosenbergs experiencing a corresponding financial disaster.

55.    Specifically, in such instance, the Rosenbergs would be required to pay to the Trustee $663,700 for funds in that amount which Mr. Rosenberg received predominately from third parties, and almost immediately transferred to BARM during the period of time that BARM, the BARM Professionals, and the BARM Creditors knew of Mr. Barkany's fraudulent conduct, but the Rosenbergs did not. And then, the Trustee would pay over to the BARM Creditors the overwhelming portion of the $663,700 recovered by the Trustee from the Rosenbergs as a consequence of Mr. Rosenberg having made the five BARM Payments to BARM! Clearly, such an outcome is inherently unfair, and would result in the manifest unjust enrichment of the BARM Creditors. In these circumstances, all of the elements of an unjust enrichment claim exist: (i) a direct relationship between the Plaintiffs and the BARM Defendants, (ii) the BARM Defendants would be enriched at the Plaintiffs' expense, and (iii) it would be inequitable for the BARM Defendants to retain those benefits at Plaintiffs' expense.

**Transfer Of $206,000 From Mr. Rosenberg to Saul Kessler**

56.    Another Challenged Transfer asserted by the Trustee in the Rosenberg Action is a third party $500,000 transfer into the Rosenberg Bank Account on or about June 14, 2011 that was made at Barkany's direction.

57.    While the Rosenberg Action Complaint does not identify the transferor of those funds into the Rosenberg Bank Account, that transfer (the "Molinaro Koger Transfer") was made by a company called Molinaro Koger. Moreover, upon information and belief, Mr. Kessler had previously transferred $500,000 of his own funds to Molinaro Koger in order to invest in a Barkany deal.

58.    The same day that Mr. Rosenberg received the Molinaro Koger Transfer, at Barkany's specific request and direction, Mr. Rosenberg transferred $206,000 to Mr. Kessler (the "Kessler Payment"), and over $280,000 to Barkany. Mr. Rosenberg transferred an additional $23,000 to Mr. Barkany between June 20 and 23, 2011.

59.    Upon information and belief, all of the benefits from the Molinaro Koger Transfer and the Kessler Payment were received by Mr. Kessler and Barkany.

60.    On the other hand, Plaintiffs received no benefit from any portion of Molinaro Koger Transfer or any part of the Kessler Payment.

61.    Mr. Rosenberg received the Molinaro Koger transfer and then used the funds from the Molinaro Koger transfer in order to make the Kessler Transfer, and send the balance of those funds to Barkany, while Mr. Rosenberg was unaware that Barkany had been engaged in a Ponzi Scheme, and while Mr. Rosenberg was unaware that Barkany had confessed the Ponzi Scheme to BARM, to the BARM Professionals and to the BARM Creditors.

62.    Had Mr. Rosenberg been aware that the funds transferred to him at Barkany's direction via the Molinaro Koger Transfer had been transferred illegitimately, and / or that Mr. Rosenberg's consent to accommodate Barkany's request and act for the benefit of Mr. Kessler would put Mr. Rosenberg at risk to the assertion of a $500,000 avoidance claim being made against him and Mrs. Rosenberg by a bankruptcy trustee, Mr. Rosenberg would never have agreed to receive the transfer, or to make the payment to Mr. Kessler. In these circumstances, all of the elements of a claim for reimbursement on the basis of mistake in fact are present.

63.   In addition, in the Rosenberg Action, the Trustee, among other things, seeks to avoid and recover from the Rosenbergs the $206,000 portion of the Molinaro Koger Transfer that became the Kessler Transfer, notwithstanding the fact that the transfer resulted in a $206,000 reduction in Barkany's obligations to Mr. Kessler, and the fact that the Rosenbergs received no benefit from any portion of the Molinaro Koger Transfer, including the $206,000 that Mr. Rosenberg transferred to Mr. Kessler.

64.   Under these facts and circumstances, it would be inequitable, and a matter of unjust enrichment for Mr. Kessler to have received the full benefit of the $206,000 Kessler Transfer, while at the same time the Rosenbergs, who received no benefit from that transfer or from any portion of the Molinaro Koger Transfer, are being sued to pay over to the Trustee the $206,000 Kessler Transfer as well as the balance of the Molinaro Koger transfer to the Trustee. Therefore, all of the elements of an unjust enrichment claim exist: (i) a direct relationship between Plaintiffs and Mr. Kessler, (ii) Mr. Kessler would be enriched at Plaintiffs' expense and (iii) it would be inequitable for Mr. Kessler to retain that benefit at Plaintiffs' expense.

### FIRST CLAIM BY PLAINTIFFS (against CORTLAND REALTY INVESTMENTS LLC)

65.   Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 – 64 of this Complaint.

66.   To the extent, if any, that Plaintiffs are held to be liable to pay over to the Trustee some or all of the $663,700 which were transferred (together with $93,000 from the Plaintiffs' own funds) by Mr. Rosenberg to BARM for the benefit of the BARM Creditors in the five Rosenberg Payments to the BARM Defendants, Plaintiffs are entitled to recover from the distribution received by Cortland Realty related to the Cortland Realty Claim, and / or on Cortland Realty's pro rata share of the distribution to BARM on the BARM Omnibus Claims, the full amount of Cortland Realty's allocable share of the $730,000 transferred via the five Rosenberg Payments to the BARM Defendants.

### SECOND CLAIM BY PLAINTIFFS (against MARSHAL EISENBERG and DEBRA EISENBERG WILDER)

67.  Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1- 64 of this Complaint.

68.   To the extent, if any, that Plaintiffs are held to be liable to pay over to the Trustee some or all of the $663,700 which were transferred (together with $93,000 from the Plaintiffs' own funds) by Mr. Rosenberg to BARM for the benefit of the BARM Creditors in the five Rosenberg Payments to the BARM Defendants, Plaintiffs are entitled to recover from Marshal Wilder's and Debra Eisenberg Wilder's distributions related to the Wilders Claim, and / or their respective pro rata shares of the distribution to BARM on the BARM Omnibus Claims, the full amounts of (i) Marshal Wilder's allocable share and (ii) Debra Eisenberg Wilder's allocable share of the $730,000 transferred via the five Rosenberg Payments to the BARM Defendants.

### THIRD CLAIM BY PLAINTIFFS (against SETH FARBMAN and SSS, LLC)

69.   Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1- 64 of this Complaint.

70.   To the extent, if any that Plaintiffs are held to be liable to pay over to the Trustee some or all of the $663,700 which were transferred (together with $93,000 from the Plaintiffs' own funds) by Mr. Rosenberg to BARM for the benefit of the BARM Creditors in the five Rosenberg Payments to the BARM Defendants, Plaintiffs are entitled to recover from Seth Farbman's and SSS LLC's distributions related to the Farbman Claim, and / or their respective pro rata shares of the distribution to BARM on the BARM Omnibus Claims, the full amounts of (i) Seth Farbman's allocable share and (ii) SSS, LLC's allocable share of the $730,000 transferred via the five Rosenberg Payments to the BARM Defendants.

**FOURTH CLAIM BY PLAINTIFFS (against RACHEL GOBER and THE BOSS'S DAUGHTER LLC)**

71.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1- 64 of this Complaint.

72.     To the extent, if any that Plaintiffs are held to be liable to pay over to the Trustee some or all of the $663,700 which were transferred (together with $93,000 from the Plaintiffs' own funds) by Mr. Rosenberg to BARM for the benefit of the BARM Creditors in the five Rosenberg Payments to the BARM Defendants, Plaintiffs are entitled to recover from Rachel Gober's and The Boss's Daughter LLC's distributions related to the Gober Claim, and / or their respective pro rata shares of the distribution to BARM on the BARM Omnibus Claims, the full amount of (i) Rachel Gober's allocable share and (ii) The Boss's Daughter, LLC's allocable share of the $730,000 transferred via the five Rosenberg Payments to the BARM Defendants.

**FIFTH CLAIM BY PLAINTIFFS (against SHALOM MAIDENBAUM)**

73. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 - 64 of this Complaint.

74.     To the extent, if any, that Plaintiffs are held to be liable to pay over to the Trustee some or all of the $663,700 which were transferred (together with $93,000 from the Plaintiffs' own funds) by Mr. Rosenberg to BARM for the benefit of the BARM Creditors in the five Rosenberg Payments to the BARM Defendants, Plaintiffs are entitled to recover from Shalom Maidenbaum's distribution related to the Maidenbaum Claim, and / or Maidenbaum's pro rata share of the distribution to BARM on the BARM Omnibus Claims, the full amount of Shalom Maidenbaum's allocable share of the $730,000 transferred via the five Rosenberg Payments to the BARM Defendants.

**SIXTH CLAIM BY PLAINTIFFS (against JORDAN MOST)**

75.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 - 64 of this Complaint.

76.    To the extent, if any, that Plaintiffs are held to be liable to pay over to the Trustee some or all of the $663,700 which were transferred (together with $93,000 from the Plaintiffs' own funds) by Mr. Rosenberg to BARM for the benefit of the BARM Creditors in the five Rosenberg Payments to the BARM Defendants, Plaintiffs are entitled to recover from Jordan Most's distribution related to the Most Claim. and / or Most's pro rata share of the distribution to BARM on the BARM Omnibus Claims, the full amount of Jordan Most's allocable share of the $730,000 transferred via the five Rosenberg Payments to the BARM Defendants.

**SEVENTH CLAIM BY PLAINTIFFS (against JANET PINSKY)**

77.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 - 64 of this Complaint.

78.    To the extent, if any, that Plaintiffs are held to be liable to pay over to the Trustee some or all of the $663,700 which were transferred (together with $93,000 from the Plaintiffs' own funds) by Mr. Rosenberg to BARM for the benefit of the BARM Creditors in the five Rosenberg Payments to the BARM Defendants, Plaintiffs are entitled to recover from Janet Pinsky's distribution related to the Janet Pinsky Claim, and / or Janet Pinsky's pro rata share of the distribution to BARM on the BARM Omnibus Claims, the full amount of Janet Pinsky's allocable share of the $730,000 transferred via the five Rosenberg Payments to the BARM Defendants.

**EIGHTH CLAIM BY PLAINTIFFS (against GERALD PINSKY)**

79.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 - 64 of this Complaint.

80.    To the extent, if any, that Plaintiffs are held to be liable to pay over to the Trustee some or all

of the $663,700 which were transferred (together with $93,000 from the Plaintiffs' own funds) by Mr. Rosenberg to BARM for the benefit of the BARM Creditors in the five Rosenberg Payments to the BARM Defendants, Plaintiffs are entitled to recover from Gerald Pinsky's distribution related to the Gerald Pinsky Claim. and / or Gerald Pinsky's pro rata share of the distribution to BARM on the BARM Omnibus Claims, the full amount of Gerald Pinsky's allocable share of the $730,000 transferred via the five Rosenberg Payments to the BARM Defendants.

### NINTH CLAIM BY PLAINTIFFS (against CHAIM SILBERBERG AND MR. SAN, LLC)

81.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 - 64 of this Complaint.

82.     To the extent, if any that Plaintiffs are held to be liable to pay over to the Trustee some or all of the $663,700 which were transferred (together with $93,000 from the Plaintiffs' own funds) by Mr. Rosenberg to BARM for the benefit of the BARM Creditors in the five Rosenberg Payments to the BARM Defendants, Plaintiffs are entitled to recover from Chaim Silberberg's and Mr. San LLC's distributions related to the Silberberg Claim, and / or their respective pro rata shares of the distribution to BARM on the BARM Omnibus Claims,  the full amounts of (i) Chaim Silberberg's allocable share and (ii) Mr. San, LLC's allocable share of the $730,000 transferred via the five Rosenberg Payments to the BARM Defendants.

### TENTH CLAIM BY PLAINTIFFS (against MOSHE SCHREIBER, LEAH SCHREIBER, CENTRAL STRATEGIES LLC, and MLS RESOURCES LLC)

83.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 - 64 of this Complaint.

84.     To the extent, if any that Plaintiffs are held to be liable to pay over to the Trustee some or all of the $663,700 which were transferred (together with $93,000 from the Plaintiffs' own funds) by Mr.

Rosenberg to BARM for the benefit of the BARM Creditors in the five Rosenberg Payments to the BARM Defendants, Plaintiffs are entitled to recover from Moshe Schreiber's, Leah Schreiber's, Central Strategies LLC's, and MLS Resources LLC's distributions related to the Schreibers Claim, and / or their respective pro rata shares of the distribution to BARM on the BARM Omnibus Claims, the full amounts of (i) Moshe Schreiber's allocable share (ii) Leah Schreiber's allocable share (iii) Central Strategies, LLC's allocable share and (iv) MLS Resources, LLC's allocable share of the $730,000 transferred via the five Rosenberg Payments to the BARM Defendants.

### ELEVENTH CLAIM BY PLAINTIFFS (against MORDECHAI HELLMAN)

85.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 - 64 of this Complaint.

86.     To the extent, if any, that Plaintiffs are held to be liable to pay over to the Trustee some or all of the $663,700 which were transferred (together with $93,000 from the Plaintiffs' own funds) by Mr. Rosenberg to BARM for the benefit of the BARM Creditors in the five Rosenberg Payments to the BARM Defendants, Plaintiffs are entitled to recover from Mordechai Hellman's distribution related to the Hellman Claim, and / or Hellman's pro rata share of the distribution to BARM on the BARM Omnibus Claims,  the full amount of Mordechai Hellman's allocable share of the $730,000 transferred via the five Rosenberg Payments to the BARM Defendants.

### TWELFTH CLAIM BY PLAINTIFFS (against BARM)

87.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 – 64, 66, 68, 70, 72, 74, 76, 78, 80, 82, 84 and 86 of this Complaint.

88.     To the extent, if any, that Plaintiffs are held to be liable to pay over to the Trustee some or all of the $663,700 which were transferred by Mr. Rosenberg to BARM for the benefit of the BARM Creditors in the five Rosenberg Payments to the BARM Defendants, Plaintiffs are entitled to recover from BARM's distribution on the BARM Omnibus Claims the full $730,000 which Rosenberg

transferred via the five Rosenberg Payments to the BARM Defendants.

**THIRTEENTH CLAIM BY PLAINTIFFS (against SAUL KESSLER)**

89.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 - 64 of this Complaint.

90.    To the extent, if any, that Plaintiffs are held liable to pay over to the Trustee some or all of the $206,000 out of the Molinaro Koger Transfer to Kessler, Plaintiffs are entitled to recover from Mr. Kessler's distributions on the Kessler Claims an amount equal to the portion of the Kessler Transfer paid by the Plaintiffs to the Trustee.

**FOURTEENTH CLAIM BY PLAINTIFFS (against all DEFENDANTS)**

91.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 – 64, 66, 68, 70, 72, 74, 76, 78, 80, 82, 84 and 86, 88 and 90 of this Complaint.

92.    Under New York Law, a constructive trust may be imposed against monies that have been acquired in such circumstance that the holder of title to that money may not in good conscience retain the beneficial interest in that property.

*[Balance of page intentionally left blank]*

93.    Plaintiffs are entitled to a declaratory judgment imposing a constructive trust against all the distributions from the Estate Funds received by each of the BARM Defendants, and by Mr. Kessler for the full amount that this Court directs is payable by each of the BARM Defendants and by Mr. Kessler under the first Thirteen Claims asserted in this Complaint.

**WHEREFORE,** Plaintiffs respectfully request this Court to enter judgment against each of the Defendants for the relief requested by Plaintiffs in the Fourteen Claims asserted in this Complaint, granting Plaintiffs their costs of this action, and also granting Plaintiffs such other and further relief as this Court deems proper.

Dated:  August 3, 2017

*/s/ Lester M. Kirshenbaum*
Lester M. Kirshenbaum
Vice President - Legal
Ethical Products, Inc.
27 Federal Plaza
Bloomfield, NJ 07003
973-707-0700 x400
Attorney for Plaintiffs